UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

NANCY NEMHAUSER and                CASE NO. 5: 18 cv - 87 -Oc 30PRL
LUBOMIR JASTRZEBSKI,

     Plaintiffs,

vs.

CITY OF MOUNT DORA, FLORIDA,
a municipal corporation

     Defendant.

_____/

**VERIFIED COMPLAINT FOR VIOLATION OF FIRST AND
FOURTEENTH AMENDMENTS UNDER 42 U.S.C. § 1983**

**INTRODUCTION**

1.    This civil rights lawsuit, under 42 U.S.C. Section 1983, seeks to vindicate the constitutional right of Nancy Nemhauser and Lubomir Jastrzebski (Plaintiffs) to engage in free speech on their private property by painting a wall and structure with an artistic mural.

2.    In 2017, the Plaintiffs contracted with a local artist to paint a mural on a wall in front of their house, and eventually extended onto their house, inspired by the painting "Starry Night" by Vincent Van Gogh. The mural has a special meaning to Nancy and Lubomir, as it was commissioned for their adult son, who suffers from autism and finds artwork—and now this mural—calming and comforting.

1

3.     The City of Mount Dora (City or Defendant) has demanded that the plaintiffs paint over the artistic mural, despite the fact that there are no zoning codes or ordinances in Mount Dora that outlaw or in any other way address murals, or that regulate the aesthetics of paint color, patterns, or designs on residential private property. The city initially cited the mural as "graffiti" under the Abandoned Real and Person Property section of the Code of Ordinances. At the code enforcement hearing, the city abandoned the graffiti charged and instead claimed that the mural is an impermissible sign under the City's sign ordinance. Plaintiffs now face a continuing fine that is in excess of $10,000 and that will continue to accrue at $100-per day up to the full value of the property—unless they destroy the artistic mural by painting over it "with solid color paint." In light of that fine, Plaintiffs have ceased any further work on the mural, and it remains unfinished and subjected to potential destruction from either city action or exposure to the elements.

4.     Plaintiffs seek a declaratory judgment that the challenged laws are invalid, unenforceable, and void on their face and as applied to Plaintiffs; preliminary injunctive relief halting enforcement of the challenged laws; permanent injunctions against further enforcement of the challenged laws; and implementation of any similar policy.

## JURISDICTION AND VENUE

5.     Plaintiffs bring this civil-rights lawsuit pursuant to the First Amendment to the U.S. Constitution, as incorporated against the states by the Fourteenth Amendment; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201, for injunctive and declaratory relief. This Court has jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 42 U.S.C. § 1983. Venue lies in this Court

under 28 U.S.C. § 1391(b) on the grounds that some or all of the conduct at issue took place in, and/or some or all of the Defendants reside in, this District.

## PARTIES

6.     Plaintiff Nancy Nemhauser is retired. She has spent, and continues to spend, a great deal of time attending to her disabled son's needs, safety, education, and well-being.

7.     Plaintiff Lubomir Jastrzebski immigrated to the United States of America from Communist Poland on December 29, 1974. His first paying job in the United States was at the Massachusetts Institute of Technology (MIT) where he did research and post-doctoral work as a physicist. He continues to work in related fields of materials science and engineering.

8.     Plaintiffs are a married couple with one child, a disabled adult son who suffers from autism. They jointly hold title to the property at 306 West Sixth Avenue, Mount Dora, Florida.

9.     The City of Mount Dora is a municipality within the State of Florida. It is subject to the United States Constitution, including the First and Fourteenth Amendments, and to suit under 42 U.S.C. § 1983.

## THE CHALLENGED LAW

10.     The Mount Dora Land Development Code, Chapter VI, establishes building design standards for the City of Mount Dora.

11.     The Code does not contain any aesthetic standards regulating the color, patterns, or designs that may permissibly be painted on any wall or structure within the city.

12. Chapter VI, section 6.7 and Chapter VIII together form a "sign code" (Ordinance) regulating the nature and size of signs that are permissible within Mount Dora.

13. The definition of "sign" within the sign code is:

Any letter, figure, character, mark, plane, point, marquee sign, design, poster, pictorial, picture, stroke, stripe, line, trademark, reading matter, inflatable device, or illuminated surface, which shall be so constructed, placed, attached, painted, erected, fastened, or manufactured in any manner whatsoever, so that the same shall be used for the attraction of the public to any place, subject, person, firm, corporation, public performance, article, machine, or merchandise, whatsoever, which is displayed in any manner whatsoever.

Mount Dora Land Dev. Code, Ch, VIII.

14. Anything deemed a "sign" is only allowed if it fits into the enumerated list of signs under the code and only if the property owner receives a permit for that sign. The list of permissible signs are included within §§ 6.7.1, 6.7.2, and 6.7.3.

15. The sign code prohibits all signs "not specifically allowed." Mount Dora Land Dev. Code § 6.7.4(18).

16. Nearly all of the categories of permissible signs are based on the content of the sign. For example "Campaign signs" are signs that "announce[] or promote[] a candidate for election to public office. "Construction signs" are signs "giving the name or names of principal contractors, architects and lending institutions responsible for construction on the site where the sign is placed, together with other information included thereon." An "outdoor advertising sign" is any sign "which advertises a business, organization, event, person, place or thing not on the premises of said business,

4

organization, event, person, place or thing." Mount Dora Land Dev. Code, Ch. VIII. *See* Chapter VIII of the Land Development Code (defining the categories of permissible signs).

17.     Code enforcement violations may be cited at a rate of up to $250-per day. Under the applicable state and local laws, potential fines may accrue up to the "just value, as determined by the Lake County Property Appraiser's Office as of the date of imposition of fines, of the property subject to the code enforcement action." Fla. Stat. Ch. 162; Mount Dora Code of Ord. § 2.1361.

## DEFENDANTS' ENFORCEMENT OF THE SIGN CODE

18.     In 2009, Plaintiffs purchased the residential property at 306 West Sixth Avenue, Mount Dora, Florida (property), where they currently reside.

19.     The property is currently in the process of being prepared as a home for the Plaintiffs' adult son, who suffers from autism and other medical issues that require full-time caretakers.

20.     The property contains a house and is bordered on two sides by a wall approximately five-feet tall.

21.     The property is within the City of Mount Dora, Florida (Defendant), and subject to its laws and ordinances, including the Mount Dora Land Development Code. It is therefore subject to Chapter VI, section 6.7 and Chapter VIII, which together form the sign code regulating the nature and size of signs that are permissible within the City.

22.     In July, 2017, while in the process of refurbishing the house as a home for their adult son, Plaintiffs were contacted by an artist who suggested that a wall surrounding

the house on the property could have its cracked and peeling paint replaced with an artistic mural.

23.     After agreeing on a theme for the mural, inspired by the painting Starry Night by Vincent Van Gogh, the artist began painting the wall facing West Old US Highway 441.

24.     Plaintiffs commissioned the mural purely for its artistic value and beauty, and have at no time had any intent to advertise, promote, or otherwise profit from the existence of the mural. There are no commercial advertisements or markings on the artwork, nor is there identification of the artist, such as a signature or other identifying marking.

25.     On July 26, 2017, Mount Dora code enforcement officer Cindy Sommer left a "door hanger" notice of violation on the front door of the house on the Plaintiffs' property.

26.     Plaintiff Nancy Nemhauser called Ms. Sommer to inquire about the notice and was told that the Mount Dora code dealing with graffiti required the wall to match the house.

27.     In response to the Plantiffs' discussions with Ms. Sommer, the Plaintiffs further contracted with the artist to extend the mural onto the house in order to comply with the stated requirement that the wall match the house.

28.     On September 29, 2017, a hearing on the Notice of Violation was conducted before special magistrate David Tegeler (Magistrate). At the beginning of the hearing, the Defendant dropped the claimed violation of the city graffiti ordinance, continuing only on the theory that the mural constituted an "unpermitted sign" under the sign code Ordinance.

29.     During the hearing, the code enforcement officer was unable to articulate any standard as to what would or would not make any particular painting, design, or other adornment a "sign" as opposed to an unregulated aesthetic design.

30.     The code enforcement officer stated that items such as flags and other painted designs would be considered acceptable based on their content, including hypotheticals such as a mailbox painted with the phrase "Go Gators!"

31.     When repeatedly asked what distinguished various painted designs within the city from being a sign or not a sign, the officer used phrases such as "I don't know if I would call that signage" and "I don't have an answer for that."

32.     During the course of the hearing, the code enforcement officer expressed distaste at the mural, expressly admitting, "I'm not into that type of artwork" and describing it as "juvenile-type painting of some sort."

33.     At the end of the hearing, the Magistrate ruled that the mural was an unpermitted sign.

34.     The Magistrate ruled that the mural did not fall within any of the ten permissible categories of signs, and was therefore impermissible.

35.     The Magistrate ruled that the mural constituted a sign because "the effect of these designs on the wall and house structure . . . attract[s] the attention of the public to [itself]."

36.     At the conclusion of the hearing, the Magistrate ordered the Plaintiffs to paint over the mural within 30 days. The order required the wall and structure be painted "in a

solid color. No graphics. No design. Nothing that is going to end up attracting the attention of the public."

37.     On December 7, 2017, the City held an imposition of fines hearing, at which the Plaintiffs were fined $100-per day for the failure to paint over the mural, for a total of $3,100.

38.     At the behest of Defendant, on February 1, 2018, the Magistrate imposed a continuing violation of $100-per day, to accrue until the mural was painted over.

39.     The fine stands at over $10,000 today, and will continue to accrue at $100 per day unless enjoined by this Court.

## DECLARATORY RELIEF ALLEGATIONS

40.     Under the First Amendment to the United States Constitution, Plaintiffs have a federal right to engage in expressive activity on their private property.

41.     Under the Free Speech Clause of the First Amendment to the U.S. Constitution, the government may not enact content-based restrictions on expressive activity, including the display of signs or other expressive works on private property, without narrowly tailoring the restriction to a compelling governmental interest.

42.     Under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, the government may not enact laws that are so vague that they either fail to inform ordinary people as to what conduct is prohibited or invite arbitrary and discriminatory enforcement.

43.     Under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, governments may not punish individuals that have not engaged in any behavior that is proscribed by a duly-enacted law.

44.     Under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, government may not selectively enforce laws against one individual while ignoring identically situated individuals.

45.     Defendant City enacted, and is charged with enforcing, the sign code.

46.     There is a justiciable controversy in this case as to whether the Ordinance violates the First and Fourteenth Amendments on its face.

47.     A declaratory judgment as to whether the Ordinance violates the First and Fourteenth Amendments will clarify the legal relations between Plaintiffs and Defendant, with respect to enforcement of the Ordinance.

48.     A declaratory judgment as to the constitutionality of the Ordinance will give the parties relief from the uncertainty and insecurity giving rise to this controversy.

## INJUNCTIVE RELIEF ALLEGATIONS

49.     Plaintiffs have no adequate remedy at law to address the infringement of their free speech, equal protection, and due process rights affected by the enforcement of the Ordinance under color of state laws of their claims that the Ordinance violates the First and Fourteenth Amendments.

50.     Under the challenged Ordinance, Plaintiffs are required to paint over the artistic mural which they have commissioned on their wall and house, and Plaintiffs are currently being fined an amount of $100 for each day they do not paint over the mural.

Plaintiffs wish to complete the mural and have already paid the artist for its completion, but have refrained from doing so from fear of further penalties. Because the artist has not completed the mural, it has never received a protective final coat and faces degradation due to exposure to the elements.

51.     Painting over Plaintiffs' mural will permanently destroy an expressive work of art that holds special meaning to the Plaintiffs and their autistic son.

52.     Plaintiffs will suffer irreparable injury absent a permanent injunction restraining Defendant from enforcing the Ordinance.

53.     Plaintiffs' injury—the immediate and unconstitutional prohibition of their free speech rights on their own property—outweighs any harm the injunction might cause Defendant.

54.     Defendants contend that their actions are consistent with all applicable laws.

55.     If not enjoined by this Court, Defendants and their agents, representatives, and employees will continue to enforce the sign code in violation of the First and Fourteenth Amendments.

## LEGAL CLAIMS

**Count I: Free Speech**

*The Ordinance is unconstitutional under the First Amendment to the U.S. Constitution*

56.     Plaintiffs incorporate and re-allege by reference paragraphs 1-41 and 45-55.

57.     This claim is brought under the First and Fourteenth Amendments to the U.S. Constitution, and under 42 U.S.C. § 1983.

58.     Plaintiffs have a constitutional right under the First Amendment to convey expressive messages on their private property.

59.     The Ordinance violates the Free Speech Clause of the First Amendment to the Constitution, on its face and as applied, because it is a content-based restriction on speech that impermissibly limits the Plaintiffs' expressive rights, acts as a prior restraint on speech, and is unconstitutionally overbroad.

60.     Under the expansive interpretation of sign adopted by the City and Magistrate and the narrow categories of permitted signs under the sign code, substantial amounts of expressive and otherwise lawful activity can potentially be regulated as an "unpermitted sign."

61.     For example, a mural or "sign" of any size depicting Martin Luther King, Jr., the Mona Lisa, the Florida Gators mascot, or the text of the First Amendment would be forbidden under the sign code.

62.     The City's and Magistrate's interpretation of the definition of "sign" also grants unbridled discretion to Defendants to make subjective determinations as to what is or is not a sign under the sign code, allowing arbitrary and/or discriminatory enforcement.

63.     The sign code is also a content-based regulation on speech because it permits certain categories of sign based on their content, including "construction" and "real estate" signs, while prohibiting all other forms of expressive content that fall under the definition of "sign" within Chapter VIII.

64.     Moreover, the sign code treats permissible signs differently based on their content. For example, "campaign signs," are signs that "announce[] or promote[] a

candidate for election to public office," and in residential zones these signs can be up to 4-square feet. "Community center signs" are signs "associated with and erected by a community center," and can be up to 32-square feet in size.

65.     The Ordinance is subject to strict scrutiny under the First Amendment. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015); *City of Ladue v. Gilleo*, 512 U.S. 43 (1994).

66.     The City of Mount Dora has no compelling or significant interest that can justify the Ordinance, or the differential treatment of speech depending on its content.

67.     The Ordinance is not the least restrictive means to achieve a compelling government interest, nor is it narrowly tailored to achieve a significant government interest.

68.     The Ordinance does not leave open ample alternative avenues of communication for the Plaintiffs to convey their messages.

**Count II: Due Process**

*The Ordinance is unconstitutional under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution*

69.     Plaintiffs incorporate and re-allege by reference paragraphs 1-40, 42-43, and 45-55.

70.     This claim is brought under the Fourteenth Amendment to the U.S. Constitution, and under 42 U.S.C. § 1983.

71.     Plaintiffs have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, to be free from laws that are unconstitutionally vague.

72.     The Ordinance is unconstitutionally vague on its face and as applied to Plaintiffs.

73.     The sign code defines a "sign," in part, as anything that is "used for the attraction of the public."

74.     The definition of sign within the Ordinance does not establish what is a sign with sufficient definiteness that an ordinary person can know what conduct is prohibited.

75.     The Ordinance encourages arbitrary and discriminatory enforcement.

76.     Whether something is used for the "attraction of the public" is subjective and vague, and can apply to nearly anything.

77.     For example, other painted designs, artworks, and adornments within residential neighborhoods—including flags, painted mailboxes or garage doors, and metal or stone sculptures—could all fall within the scope of the Ordinance, but upon information and belief, have never been cited or enforced by Defendant.

**Count III: Equal Protection**

*Defendant's enforcement of the Ordinance is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution*

78.     Plaintiffs incorporate and re-allege by reference paragraphs 1-40 and 44-55.

79.     This claim is brought under the Fourteenth Amendment to the U.S. Constitution, and under 42 U.S.C. § 1983.

80.     Plaintiffs have a constitutional right, under the Equal Protection Clause of the Fourteenth Amendment, to be free from the selective enforcement of laws or to be treated as a "class of one."

13

81.    Within residential zoned areas of Mount Dora, numerous other painted designs exist. Examples include a painting of a peacock on a front door overhang, a floral design on a shed and garage, and a prominently displayed painting of a nude female body on the detached hood of a car on the front wall of a house.

82.    There is no meaningful distinction between the painted designs on Plaintiffs house and those that exist on other structures throughout the City of Mount Dora.

83.    Defendant has never cited or otherwise undertaken an enforcement action against any of these other artwork designs as an unpermitted sign under the Ordinance.

84.    The Order of October 6, 2017, further places a requirement on Plaintiffs that they must paint their wall and house "with solid color paint," despite the fact that no other individual within Mount Dora faces a similar restriction.

85.    This selective enforcement is not narrowly tailored to a compelling governmental interest.

**Count IV: Ultra Vires Action**

*Defendant's application of the Ordinance to Plaintiffs is ultra vires under the language of the Ordinance*

86.    Plaintiffs incorporate and re-allege by reference paragraphs 1-40, 43, and 45-55.

87.    This claim is brought under the Fourteenth Amendment to the U.S. Constitution, and under 42 U.S.C. § 1983.

88.    Due Process requires that a law be properly enacted before conduct may be criminalized.

89.    The government must prove each element of a law before imposing punishment.

90.    To qualify as a sign under the sign code, the sign must "be so . . . painted . . ., so that the same shall be used for the attraction of the public" to a "place, subject, person, firm, corporation, public performance, article, machine, or merchandise."

91.    The Magistrate disregarded the required intent element contained within the sign code, determining that—regardless of any purpose or intention—the outcome of attraction was sufficient to establish a sign under the Ordinance.

92.    The Magistrate further disregarded the listed items that establish the intent element, "place, subject, person, firm, corporation, public performance, article, machine, or merchandise," instead holding that the fact that the mural "attracted the attention of the public to [itself]" was sufficient to bring the mural under the definition of sign within the Ordinance.

93.    Because anything can be said to attract attention to itself, including landscaping, sculptures, holiday decorations, or architectural designs, the Magistrate's interpretation raises constitutional concerns.

94.    The Order of October 6, 2017, imposed a requirement that Plaintiffs paint their wall and house "with solid color paint," despite the fact that no law, regulation, or ordinance within Mount Dora imposes such a requirement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court:

a.     Upon motion, grant a temporary restraining order preventing the enforcement of the sign code;

b.     Grant a permanent injunction preventing the enforcement of the sign code;

c.     Enter a declaration that the sign code is unconstitutional on its face and as applied to the Plaintiffs;

d.     Award Plaintiffs nominal damages;

e.     Award costs and attorneys' fees in this action pursuant to 42 U.S.C. § 1988; and

f.     Allow such other and further legal and equitable relief as this Court finds just and proper.

DATED:  February 16, 2018.

Respectfully submitted,

JEREMY TALCOTT, Cal. Bar No. 311490*
E-mail:  JTalcott@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, CA  95814
Telephone:  (916) 419-7111
Facsimile:  (916) 419-7747
Service:  IncomingLit@pacificlegal.org

CHRISTINA M. MARTIN, FBN:  100760
E-mail:  CMartin@pacificlegal.org
Pacific Legal Foundation
8645 N. Military Trail, Suite 511
Palm Beach Gardens, FL  33410
Telephone:  (561) 691-5000
Facsimile:  (561) 691-5006
*Attorneys for Plaintiffs*
*Special Appearance/Pro Hac Vice* Pending

## VERIFICATION

Under penalties of perjury, I declare that I have read the foregoing VERIFIED COMPLAINT and that the facts stated in it are true, to the best of my knowledge and belief.

DATED: February 16, 2018.

_____
NANCY NEMHAUSER

DATED: February 16, 2018.

_____
LUBOMIR JASTRZEBSKI

17